CHRISTIANSEN, Respondent

v.

UNITED NATIONAL BANK OF VERMILLION et al., Appellants

(176 N.W.2d 65)

(File No. 10737. Opinion filed April 7, 1970)

Rehearing denied April 24, 1970.

**Everett A. Bogue,** of **Bogue & Weeks,** Vermillion, for plaintiff and respondent.

**M. T. Woods,** of **Woods, Fuller, Shultz & Smith,** Sioux Falls, for defendants and appellants.

MUNDT, Circuit Judge.

This is an action in conversion against the defendant, United National Bank of Vermillion, and two of its officers, Larry Ticknor and James Anderson. The plaintiff, Bessie Christiansen, brought this suit to recover $10,000.00 retained by the defendant bank from the proceeds of a voluntary sale of the family homestead. Plaintiff also sought to recover $5,000.00 as fair compensation for time and money expended in recovering such proceeds. The

trial court entered judgment against the defendant bank for $10,000.00 as proceeds from the sale of the homestead, and $2,275.34 expended by plaintiff in pursuit of said funds. All defendants appeal.

Respondent and her husband, Orval Christiansen, were joint owners of a 160-acre farm in Clay County, South Dakota, which they occupied as their homestead for a number of years. In the fall of 1965 they decided to purchase a farm in Kingsbury County and, to that end, arranged to sell the Clay County farm. They moved to the farm they had purchased in Kingsbury County some time in February, 1966.

On January 7, 1966, the Clay County farm was sold at public auction and was purchased by James Anderson, one of the defendants in this action, and an officer of the defendant bank, for the sum of $20,800.00. Anderson purchased the farm for one Tom Golden, who was a customer of the defendant bank.

On the evening of the day of the sale, the defendants, Anderson and Ticknor, and auctioneer Jorgensen, who had conducted the auction sale, returned to the farm home of respondent and her husband for the purpose of having the Christiansens execute certain instruments of conveyance. The Christiansens were dissatisfied with the price realized at the auction and hesitated to sign any papers. After an hour or more of discussion, the Christiansens reluctantly signed a contract for deed and a deed naming Tom Golden as grantee. They also endorsed a check for $2,080.00, being a ten percent down payment on the purchase price. This check was then deposited in a "Jorgensen Sales Account" in the defendant bank, without any authority from either the respondent or her husband.

At the time of the sale, the Clay County farm was encumbered by a mortgage in favor of the Metropolitan Life Insurance Company, on which there remained an unpaid balance of $7,-200.00. Orval Christiansen was also indebted to the defendant bank in a substantial amount at that time, but the bank had no lien upon the farm for any part of such indebtedness. Respondent wife was at no time, and in no manner, indebted to the bank

and had no knowledge of the extent of her husband's indebtedness. While she did know that the bank expected some portion of the proceeds to be applied to her husband's debt, she did not orally or in writing authorize the bank to take possession of the funds.

The bank took possession of all of the proceeds of the sale and, on March 10, 1966, the sale was closed in the defendant bank and such proceeds distributed without the knowledge or consent of either the respondent or her husband or of anyone acting on their behalf. After satisfying the mortgage to the Metropolitan Life Insurance Company and other liens, the trial court found a balance of $11,052.89 remained. This amount defendant Ticknor applied to the various promissory notes of Orval Christiansen in favor of the bank and satisfied certain chattel mortgages securing said notes. No part of the proceeds of the sale was ever paid over to the Christiansens by the bank.

■ The bank first claims that respondent abandoned her homestead because she and her husband removed from the farm without any intention of returning. The answer to this claim is well stated by the trial court in its Memorandum Opinion, wherein it said:

> "Under our present statutes it seems futile to contend that because one must, of necessity, depart from a homestead upon voluntarily selling it, they thereby abandon it in its entirety. Following the decision in Smith v. Hart [49 S.D. 582], 207 N.W. 657, our statute was amended to provide for this precise situation. As far as is applicable here SDC 51.1802(7), as amended by Chapter 267 Laws of '57, provides: 'The homestead * * * or in the event such homestead is sold * * * by the owner voluntarily, the proceeds of such sale not exceeding the sum of Ten Thousand dollars, shall be absolutely exempt for a period of one year after the receipt of such proceeds by the owner.' "

This provision as to proceeds is not an alternative exemption. As noted by the trial court, upon a voluntary sale, every pro-

tection originally given to the homestead right in the land itself adheres to, and remains with, the "absolutely exempt" portion of the proceeds for one year after the receipt by the owners. The record is clear in this case that such proceeds never did come into the hands of the owners.

■ The bank also claims that the respondent is charged with her husband's acts and knowledge and is now estopped to claim an exemption in the proceeds of the sale of the homestead. It appears that the bank did release chattel mortgages it held on Orval's personal property, and that Orval removed these chattels to a farm in Kingsbury County and remortgaged them. Thus this property is no longer available to the bank as security. To this extent the bank did suffer a loss. But there is no evidence, as the trial court found, that respondent had any knowledge of the existence of these mortgages, or that the bank was going to change its position in relation thereto. The bank satisfied the mortgages without the presence or knowledge of either respondent or her husband.

■ Defendant bank also claims the court erred in awarding respondent the sum of $2,275.34 expended in pursuit of the $10,000.00 exemption. It is claimed that an action for conversion will not lie for money represented by a general debt, and that there can be no conversion of money unless the alleged convertor was under an obligation to return the specific money to the party claiming it. See Annot., 44 A.L.R.2d 927. At page 937 this annotation cites the case of Smith v. Donahoe, 13 S.D. 334, 83 N.W. 264. This case does not support defendant's position. It holds that in a chattel mortgage foreclosure sale, the officer shall first pay the cost and expenses of sale, then the mortgage debt, and third, the balance over to the owner of the property. A junior mortgagee, whose mortgage is due, is possessed of the mortgagor's right to the remaining surplus, and may maintain an action in trover against the officer refusing to pay such surplus to him. The trial court in its Memorandum Opinion, said:

"We do not here deal with a debt. There is not one scintilla of evidence to indicate that the Christiansens ever

authorized the deposit of these funds in the Bank, or, for that matter, that it ever was. Both of the officers who testified said, in effect, that the plaintiff never authorized them to utilize the sale proceeds in any manner. It seems clear that, legally, the Bank was a mere volunteer in closing this sale. Perhaps it had assumed some obligations to Golden in connection with getting the funds with which to pay the purchase price. The auctioneer was clear in his testimony that he was not authorized to dispose of the proceeds and did not do so other than to pay himself and some necessary expenses and charges directly connected with the sale. It seems clear that the obligation of the Bank was to turn the sale proceeds over to the Christiansens. To not do so was wrongful not criminal, just wrongful. If the Bank had some legal claim to this money it should have pursued the legal methods for impoundment in Golden's hands."

The trial court found that under the authority of Kerr v. Kerr, 74 S.D. 454, 54 N.W.2d 357, the amount claimed by respondent is a fair and reasonable compensation for the services rendered. We are satisfied that a fixed and determined sum of money is the subject of conversion.

█ As stated the judgment entered was against the bank only and it is affirmed. The individual defendants contend the court erred in failing to enter a judgment dismissing the action as to them in view of the court's opinion which indicated no judgment was to be entered against them. The trial court did not refuse to enter such judgment as they did not present one and the question is not therefore before us. Defendants can hardly complain of the judgment as it did not affect them and they were not aggrieved by it. Carlson v. West River Oil Company, 75 S.D. 333, 64 N.W.2d 294.

Affirmed.

All the Judges concur.

MUNDT, Circuit Judge, sitting for ROBERTS, P. J., disqualified.